# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 2 3 2007

JOHN F CORCORAN, CLERK
BY: _____
DEPUTY CLERK

|  |  |  |
|---|---|---|
| HARLICE D. PATTERSON, | ) | |
| | ) | |
| *Plaintiff* | ) | Civil Action No. 5:06cv00037 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | By:  Hon. James G. Welsh |
| | ) | United States Magistrate Judge |
| *Defendant* | ) | |

Plaintiff, Harlice D. Patterson, brings this action pursuant to 42 U.S.C. § 405(g) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended, ("the Act"), 42 U.S.C. §§ 416 and 423.  Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

By order of referral entered August 11, 2006, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  On the same date, the Commissioner filed her Answer and a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision.

In her subsequently filed memorandum in support of summary judgment, or alternatively for remand for administrative reconsideration, the plaintiff argues that the Commissioner's decision is not

supported by substantial evidence for two reasons. Her primary contention is that the adverse administrative decision was predicated on the administrative law judge's "impermissibl[e] substitution" of his medical judgment for that of her primary care physicians. *See* Social Security Ruling ("SSR") 96-2p. Additionally, she argues that the administrative law judge ("ALJ") failed to fulfill his obligation to consider the combined effects of her multiple impairments. *See* 20 C.F.R. § 1523.

On November 8, 2006, Commissioner filed her motion for summary judgment and supporting memorandum. In her response, the Commissioner argues that the administrative record adequately documented both the basis both for the ALJ's discount of the treating source medical opinions and his consideration of the combined limitations of the plaintiff's multiple impairments. No request was made for oral argument. [1]   The undersigned having now reviewed the administrative record, the following report and recommended disposition are submitted.

## I.    Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement established by the Act and applicable administrative regulations. If such substantial evidence exists,

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 directs that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time his or her brief is filed.

the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966).

"Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard. " *Mastro v. Apfel*, 270 F3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). The ALJ's conclusions of law are, however, not subject to the same deferential view and are to be reviewed *de novo*. *Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000).

## II.     Administrative History

The record shows that the plaintiff protectively filed her application for DIB on or about June 12, 2002. (R.90). [2]  In her application and supporting disability report, the plaintiff alleges that her disability began on January 1, 2002, due to multiple medical complaints, including back pain, asthma,

---

[2] The plaintiff had been previously awarded a period of DIB based on a disability onset date of October 2, 1991. This period of disability was later found to have ceased, and her benefits were terminated on June 30, 2001. (R.24).

3

trouble with her legs and arms, and mental problems. (R.91-93, 108, 134). Her claim was denied, both

initially and on reconsideration. (R.38-50). Pursuant to her timely request, an administrative hearing

on her application was held on February 17, 2005 before an administrative law judge ("ALJ"). (R.51-

52,77-85).[3] The plaintiff was represented by counsel at the administrative hearing. (R.24, 86-89,422-

444).

Utilizing the agency's standard five-step inquiry,[4] plaintiff's claim was denied by written

administrative decision on March 21, 2005. At the initial determinative step, the ALJ found that the

plaintiff met the Act's insured status requirements, at least through the date of the decision, and that

she had not engaged in substantial gainful activity since the alleged disability onset date. (R.25-26,35-

36,94-102). At step-two he found that the medical evidence established that the plaintiff had certain

medical problems which could cause significant vocationally relevant limitations and were, therefore,

---

[3] The administrative hearing on the plaintiff's application was initially scheduled for December 1, 2004 and was continued on the basis of her request for additional time to obtain the assistance of an attorney. (R.24,53-64,410-421).

[4] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). It begins with the question of whether, during the relevant time period, the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry is a determination whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is disabled; if not, step-four is a consideration of whether the claimant's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

"severe" impairments [5] within the meaning of the Act. (R.26,36). These impairments included depression, chronic obstructive pulmonary disease, a small lumbar disc herniation, and low average intellectual functioning. (R.26,). Her hypertension, the ALJ concluded, was controlled with medication, caused no work-related limitation and was, therefore, not "severe" impairment. (R.30).

At step-three, the ALJ concluded that these impairments (either individually or in combination) neither met nor were medically equivalents to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R30-31,36). In particular, the ALJ predicated this step-three finding on the earlier conclusions of state agency's medical consultants and the fact that "[n]o treating or examining physician ha[d] mentioned findings identical, or equivalent in severity" to a listed impairment. (R.30-31).

The ALJ next concluded that the plaintiff's allegations concerning her limitations were not fully supported in the medical record and were exaggerated, and he found that she retained the exertional ability to perform work at the light exertional level with a sit/stand option [6] and which required only simple repetitive tasks in a clean non-hazardous environment. (R.32-33,36). Continuing the required sequential decisional process, the ALJ next found that the plaintiff could not perform any

---

[5] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *See also* 20 C.F.R. § 404.1520(c).

[6] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation." *See Gibson v. Heckler*, 762 F.2$^d$ 1516, 1518(11th Cir. 1985).

Case 5:06-cv-00037-SGW-JGW   Document 16   Filed 03/23/07   Page 5 of 24   Pageid#: 68

past relevant work, and at step-five he concluded that the plaintiff was "capable of performing a significant range of light work." (R.34,36).

After issuance of the ALJ's adverse decision, the plaintiff made a timely request for Appeals Council review. (R.20,346-347). This request was subsequently denied (R.8-12), and the ALJ's unfavorable decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

## III.    Facts

The plaintiff's medical records dated before the agency's 1992 disability finding, show, *inter alia*, that she reported injuring her lumbar back in 1988 and again in 1990 in motor vehicle accidents, that she suffered from asthma and bronchitis, that she reported experiencing right hand and wrist cramping on multiple occasions, and that she appeared to have a significant "psychological overlay." (R.136,147,154). After injuring her back, physical therapy was prescribed "off and on" for her low back pain; however, it was not significantly helpful, primarily due to her "sporadic attendance." (*Id.*). A work adjustment evaluation at Woodrow Wilson Rehabilitation Center ("WWRC") in 1992 was similarly not rehabilitativly helpful, primarily due to the plaintiff's persistent pain complaints and psychological impediments. (R.136-156).

Later medical records covering the nearly ten-year period during which she received DIB, show that the plaintiff sought medical care for only two health-related problems. In July 1999 she was treated in the emergency room at Augusta Medical Center ("AMC") for a single episode of acute viral

6

gastroenteritis. (R.157-158). And in August of the following year she sought treatment for depression. (R.159).

Seeking "to supplement her Social Security income," the plaintiff returned to WWRC for a new evaluation in January 2001. (R.159). Testing and clinical interviews in connection with this "self-referral" disclosed a low average range of intellectual functioning, an ability to read only at a third-grade level, some continued symptoms of depression, continuing complaints of pain and discomfort, and continuing issues related to self-motivation. (R.159-165). At the time, the plaintiff was advised to continue recommended medical and mental health treatment, until such time that she felt able physically and emotionally to function consistently with manageable pain. (R.164).

During 2002 and 2003, the first two calendar years following the agency's termination of her monthly DIB, the plaintiff's medical records from Augusta Family Practice (Drs. Keim, Farley, Alexander, Siman and Patterson) show that she sought treatment from her primary care physicians on approximately thirty separate occasions. In addition to pharmacological management of her "asthma and arthritis" symptoms, she was treated for a chest contusion, a dental infection, a sebaceous cyst, hypertension, and for miscellaneous complaints involving right elbow pain, fatigue, joint stiffness, abdominal and gastrointestinal discomfort, urinary tract problems, left shoulder bursitis, back pain[7], right jaw pain, fluid retention, bronchitis, abdominal and rib pain (resulting from a June 2003 automobile accident), neck pain, right shoulder strain/bursitis, and headaches. (R.204-222,295-306).

---

[7] An October 2003 lumbar MRI disclosed only a "small right posterolateral disc herniation at L4-5" without any right leg rediculopathy. (R.318).

7

In December 2002 and again in February 2003, the plaintiff's primary care physicians completed medical evaluation forms which were submitted by the plaintiff as part of her application for temporary public assistance. In each, her physicians opined that she was then unable to work, and would remain so for an indefinite period, due to a combination of medical and emotional problems, including asthma, a chronic low back syndrome and depression. (R.260-264).

During 2002 and 2003, the plaintiff was also separately seen at the University of Virginia Medical Center ("UVaMC") emergency room, at the Augusta Medical Center ("AMC") emergency room, at Comprehensive Behavioral Health, and beginning in November 2003 by her new primary care provider, Dr. T. Glen Gray (Shenandoah Internal Medicine). In addition, she saw Dr. Preston Grice in the Fall of 2002 for a pain-related evaluation. [8] (R.386-391).

When seen in the UVaMC emergency room on April 12, 2002, the plaintiff presented with complaints of neck pain related to a motor vehicle accident. (R.167-172). Cervical, lumbar and thoracic X-rays were all negative. (R.173-181). [9]

In addition to an X-ray (R.185) taken at AMC in connection with the plaintiff's complaints of accident-related chest pain, she was seen in the AMC emergency room on four separate occasions during 2002. On one occasion, she sought treatment for a combination of asthma and myofacial pain

---

[8] Dr. Grice's clinical evaluation failed to identify the exact nature of plaintiff's pain, and he suggested no specific treatment regime. (R.386-391).

[9] A chest X-ray taken on the same date, however, showed the plaintiff's heart to be "markedly enlarged." (R.174).

8

complaints. (R.182-184). During the Summer of 2002, she sought treatment for a swollen tongue. (R.186-187). And in November of the same year she sought treatment, two additional times, once for a combination toothache and headache and on another for a second time several days later for an asthma attack. (R.188-189).

The plaintiff's medical records from Comprehensive Behavioral Health (Dr. Timothy Kane) (R.223-234,401-403) and AMC's outpatient mental health clinic (R334-345) show that between February and September 2003 she was seen a number of times for mental health evaluations and treatment. Based on a clinical diagnosis of bipolar affective disorder, type II, she was treated with a prescriptive regime consisting primarily of a combination of anti-depressants and anti-anxiety medications. (*Id.*). A neuropsychological evaluation on April 29, 2003 demonstrated that the plaintiff had below average intellectual abilities, a "mildly compromised" attentional capacity, an excessive somatic preoccupation, a personality disorder with histrionic traits, and low self-esteem. (R.227-230). At the time she was last seen in Dr. Kane's office, the plaintiff reported that she was doing poorly and was then experiencing an exacerbation of her depression, (R.223).

The following month, the plaintiff went to the emergency room at AMC for unrelated treatment of a fever and chills. (R.319-320). She was found to have a urinary tract infection which was treated with ciprofloxacin. (*Id.*).

When first seen by her new primary care physician, Dr. Gray, in November 2003 the plaintiff gave a medical history which included an asthmatic condition, continued regular use of cigarettes,

9

hypertension, a "bad back," past physical therapy treatment which had helped her back pain, major depression resulting in a November 2002 hospitalization, and intermittent problems with swelling of her tongue. (R.287-288). Dr. Gray's office notes covering the subsequent eighteen-month period show that the plaintiff sought treatment on nineteen occasions for a number of medical-related complaints, including right shoulder pain, [10] a right toe injury, [11] left arm pain, nasal congestion, gastroenteritis, obstructive lung disease, [12] slightly elevated blood pressure, allergy problems, depression and anxiety, chronic low back pain, pelvic pain, [13] right ear injury, chronic recurrent bronchitis, difficulty with her nerves, constipation, hypertension, chest pain, [14] right hip pain "of questionable etiology," right leg pain, [15] and stomach pain with nausea and diarrhea. [16] (R.265-286,307-310,312-317,364-365,370-375).

----

[10] A follow-up cervical MRI on December 10, 2003 demonstrated "no disc herniation or other abnormality." (R.283,316). A subsequent radiology department cervical study dated 05/14/2004 further disclosed no soft tissue abnormality. (R.269,312).

[11] An X-ray of the first digit of plaintiff's left foot was "negative." (R.285,317).

[12] A 01/22/04 pulmonary function test demonstrated "moderately" decreased vital capacity and forced expiratory volume, "more severely" decreased other flow rates, a prolonged expiratory phase, and an elevated residual volume. (R.278-279,314-315). The plaintiff's use of an inhaler resulted in a forty-one percent improvement in her forced expiratory volume and a fifty percent improvement in her maximum mid-expiratory flow. (Id.).

[13] A follow-up endovagina ultrasound examination on 04/29/04 was "negative." (R.271,313).

[14] Follow-up chest X-rays on 01/21/2005 disclosed no active cardiopulmonary disease and no interval change since the 09/28/2003 radiographic study. (R.364).

[15] On 03/18/2005, Dr. Gray "sent" the plaintiff to physical therapy and referred her for a pain clinic evaluation at Augusta Pain Management Center. (R.372,398). The administrative record, however, contains no indication that the plaintiff either attempted any physical therapy regime or followed-up with the pain clinic after her initial evaluation.

[16] Relevant to these complaints, the results of blood tests ordered by Dr. Gray disclosed no abnormality. (R.360-363).

10

During the later part of this time period, the plaintiff irregularly also sought medical care through AMC and through Valley Community Services Board ("VCSB").

At AMC she was seen for treatment of a toothache on December 24, 2004. (R.366-369). She was seen for complaints of left sided headache, right hip pain, ear pain and back pain on March 16, 2005, and she was seen at AMC for evaluation and development of a physical therapy treatment plan on April 15, 2005. (R.349-355,358-359). Lumbosacral and pelvic X-rays taken in connection with the March 2005 emergency room visit disclosed no fracture or significant abnormality. (R.356). A pain clinic evaluation in May 2005 similarly failed to disclose either an identifiable basis for the plaintiff's complaints of chronic low back pain with attendant rediculopathy or a reasonable treatment modality. (R.393-398).

Her VCSB records show that in late January 2005 the plaintiff sought treatment for depression; however, these records reflect only irregular and limited follow-up by the plaintiff. (R.323-332,375-377,380-384,400).

As part of the administrative decision-making process, a consultive medical examination was done by Dr. William Hammond, an internist, on February 21, 2003. (R.190-203). On examination, Dr. Hammond found the plaintiff to have longstanding obstructive lung disease, but to be in no distress and to show no evidence of any systemic arthritis or other significant abnormality. (R.191-192). He found some restriction in plaintiff's range of back motion, but he found her strength, coordination, reflexes and extremity range of motion all to be normal. (R.195-196).

11

The plaintiff's medical records were also reviewed both by a state agency psychologist (R.235-248) and by two state agency physicians. (R.249-258). The state agency psychologist concluded that the records pertaining to the plaintiff's mental health records documented both a Listing 12.02 organic mental disorder (learning disability) and a Listing 12.04 mood disorder. (R.235-236,238). These records, however, in the opinion of the psychologist neither demonstrated the degree of functional limitation nor the inability to do basic work activity necessary to meet the requirements of a listing-level impairment. (R.245-246249-251). Based on March and August 2003 medical record reviews, the two state agency physicians separately concluded that the records demonstrated her asthmatic condition, her lumbar disc disease, and her persistent pain complaints; however, they opined that her claim of disability due to these problems was only "partially credible" and that she retained the functional ability to engage in work activity at a light exertional level. [17] (R.252-258). In compliance with regulatory process their opinions and conclusions concerning plaintiff's impairments and her residual functional abilities were considered by the ALJ as part of the decision-making process. *See* 20 C.F.R. § 404.1527(f).

Prior to the hearing, and at the agency's request, the plaintiff's treating physician completed and submitted a detailed functional capacities assessment on January 21, 2005. (R.289-294). Therein, Dr. Gray reported his regular contact with the plaintiff over the preceding fourteen months, the

---

[17] Light work activity involves lifting no more than twenty (20) pounds with frequent lifting or carrying objects weighing up to ten (10) pounds, and a job in this exertional category generally also requires a good deal of walking or standing or, when it involves sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

plaintiff's symptoms, his diagnoses, [18] the nature and severity of his patient's pain, his pain-related clinical findings, and his "poor" prognosis for any future improvement in the plaintiff's condition. (R.291-294). In his response to this agency request, Dr. Grays also outlined in detail the plaintiff's multiple functional limitations which, in his opinion, made it "unlikely [that she would] be able to sustain employment of any kind." (*Id.*). Additionally, Dr. Gray noted his findings related to her "constant" pain, her "unstable" mental health, her medication-related drowsiness, her inability either to sit or to stand comfortably for any extended period of time, her inability to lift any significant weight on a regular or sustained basis, and her inability to perform a number of other work-related physical activities. (R.291-294).

At the administrative hearing, the plaintiff testified that she was then forty-one years of age[19] and had received only a limited education. (R.426). By her testimony, the plaintiff suggested that she was functionally illiterate, and it indicated that she was unable (or unwilling) to provide either a coherent work or medical history for the relevant period after June 30, 2001. [20] (R.426-436,439) (*See also* R.440-441). Her behavior at the hearing was described, on the record, by the ALJ, as "bizarre" and either "theatrical" or "the product of serious mental illness." (R.437).

---

[18] Chronic low back pain, asthma, hypertension, and depression.

[19] This classifies the plaintiff as a "younger worker" under 20 C.F.R. § 1563(a).

[20] The date that the plaintiff's earlier period of disability was terminated by the agency. *See* footnote 2.

13

Sandra Wells-Brown, a vocational witness, was also present and testified. (R.83-85,422-425,440-444). Asked to assume an individual with the plaintiff's vocational profile and with functional limitations requiring a sit/stand option,[21] an ability to perform only simple repetitive tasks, a clean temperature-controlled environment and no hazardous conditions, Dr. Wells-Brown opined that such a hypothetical individual would be able to do assembly work at a simple, unskilled sedentary level. (R439-440) (*See also* 440-442). In response to a follow-up question by plaintiff's counsel, Dr. Wells-Brown further testified that performance of the job type she identified would require an individual to be functionally able to work a regular eight-hour day. R.443).

## IV.    Analysis

As previously noted, the plaintiff's appeal is based on two basic assignments of administrative error. First, she contends the Commissioner's decision was predicated on an erroneous "disregard"of her treating source medical opinions.[22] Second, she argues that the ALJ erred by failing to consider the combined effects of her multiple medical conditions.

---

[21] See footnote 6.

[22] Implicitly, this argument by the plaintiff suggests a reliance on prior Fourth Circuit precedent which obligated an ALJ to give "great weight" to the opinions of treating physicians and to disregard such opinions "only if there was persuasive contrary evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). *See also Wilkins v. Secretary, HHS*, 953 F.2d 93, 96 (4th Cir. 1991): *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986). This "treating physician rule" was, however, superseded in 1991 by the agency's promulgation of 20 C.F.R. § 404.1527. *See Shrewsbury v. Chater*, 1995 U.S. App. LEXIS 27968, 1995 WL 592236 at *9 n.5 (4th Cir. 1995) (unpublished) ("As regulations supersede contrary precedent . . . the "treating physician rule" . . . [is no longer] controlling"). Under 20 C.F.R. § 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician, but it is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." Likewise, an ALJ is not bound by a treating physician's proffered opinion of disability, because final responsibility for determining the ultimate issue is reserved to the Commissioner pursuant to 20 C.F.R. § 404.1527(e)(2). *Castellano v. Secretary, HHS*, 26 F.3d 1027, 1029 (10th Cir. 1994).

14

## A. "Disregard" of Treating Physician Opinions

Arguing that the ALJ improperly refused to give the required decisional credit to the medical opinions of her three primary care physicians (Drs. Keim, Siman and Gray), the plaintiff correctly notes that each of them expressed the view that she could not work due to her asthma, chronic low back pain and chronic depression (R.260-261, 262-263, 291-294). Given these long-standing diagnoses and a medical record which she describes as "fully support[ive]," the plaintiff contends that these treating source opinions, individually and in combination, were entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527, 416.927; *SSR 96-2p; Hunter v. Sullivan*, 993 F.2$^d$ 31, 35 (4th Cir. 1992).

Citing essentially the same regulation and circuit authority, the Commissioner, in contrast, argues that the ALJ correctly afforded these medical opinions little weight because they were not accompanied by the doctors' clinical findings and were not consistent with the medical record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). *See also Hays v. Sullivan*, 907 F.2$^d$ 1453, 1457-57 (4th Cir. 1990).

Although the treating physician rule is not absolute, as a general proposition "[c]ourts typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the [individual] and has a treating relationship with the [individual]." *Hines v. Barnhart*, 453 F.3$^d$ 559, 563 (4th Cir. 2006) (*quoting Mastro v. Apfel*, 270 F.3$^d$ 171, 178 (4th Cir. 2001) (*citing* 20 C.F.R. § 404.1527) (internal quote marks omitted). *See also Robertson v. Barnhart*, 2006 U.S. Dist. LEXIS 28643; 110 Soc. Sec. Rep. Service 551 (WDVa, 2006) ("The Fourth Circuit gives great weight to the opinion of a treating physician, for such opinion reflects expert judgment based on

15

continuous observation of a patient's condition over a prolonged period of time") (*citing Smith v. Schweiker*, 795 F.2$^d$ 343, 345-46 (4th Cir. 1986); *Mitchell v. Schweiker*, 699 F.2$^d$ 185, 187 (4th Cir. 1983)).

Otherwise stated, an ALJ may choose to give a lesser weight to the testimony of a treating physician when the record demonstrates persuasive evidence to the contrary. *E.g. Foster v. Heckler*, 780 F.2$^d$ 1125, 1127 (4th Cir. 1986). If, however, a treating opinion is supported by clinical evidence or is consistent with other substantial evidence, it should be accorded controlling weight. *Craig v. Chater*, 76 F.3$^d$ 585, 590 (4th Cir. 1996).

Addressing the opinions of Drs. Keim and Siman, the ALJ appropriately noted that both their purpose [23] and perfunctory nature suggested that neither was entitled to controlling weight. (R.33). *See Craig v. Chater*, 76 F.3$^d$ 585, 590 (4th Cir. 1996); *Castellano v. Secretary, HHS*, 26 F.3$^d$ 1027, 1029 (10th Cir. 1994) ("A treating physician's opinion may be rejected if his conclusions are not supported by specific findings. (*citations omitted*)"). Similarly, the ALJ also noted that their conclusory opinions concerning the plaintiff's inability to work for an "indefinite" or "unknown" period of time failed to establish a disabling condition for the required twelve consecutive months (R.33).

---

[23] In connection with the plaintiff's efforts to obtain temporary public assistance , her primary care physicians (Drs. Keim on 12/03/2002 and Dr. Siman on 02/18/2003) opined that the plaintiff, due to asthma, a chronic low back syndrome and emotional problems, was then, and would be indefinitely, unable to work. (R.260-264).

16

Based on his review of the office notes and records of Drs. Keim and Siman, and on the later records of Dr. Gray, the ALJ concluded that they also failed to establish the plaintiff's disability within the meaning of the Social Security Act. Fairly summarized, these records document the plaintiff's asthmatic condition and arthritic symptoms; they document the pharmacological management of both conditons, and they document her treatment of a variety of other transitory medical complaints. (R.204-222, 295-306) (*See also* R.167-189, 319-320,386-391). As the ALJ concluded, however, they fail to demonstrate her disability within the meaning of the Act.

The plaintiff highlights in her memorandum, the January 2005 assessment of Dr. Gray was detailed; it identified a number of specific limitations, and it concluded that the plaintiff was unlikely to be able to work due to "chronic pain and depression" (R.294). In concluding that Dr. Gray's assessment should be given limited decisional weight, the ALJ determined that neither the medical record as a whole nor Dr. Gray's office notes was consistent with this opinion. (R.33). As support for this finding, the ALJ made specific reference to a number of Dr. Gray's records. (*Id.*)

*Inter alia,* Dr. Gray's records documented the absence of any disc disease of disabling significance. (R.264). They showed that the plaintiff's chronic pain complaints were pharmacologically managed. (*Id.*). They recorded Dr. Gray's medical treatment to have been primarily for a number of transitory medical complaints, and they documented no mental health evaluation or concerted mental health treatment. (R.265-286,307-310,312-317,364-365,370-375).

17

An ALJ's determination as to the weight to be assigned to a medical opinion should generally not be disturbed absent some indication that the ALJ has relied on "specious inconsistencies" or has not given a good reason for the weight he has assigned to a particular opinion. *Scivally v. Sullivan*, 966 F.2d 1070, 1076-77 (7th Cir. 1992). *See* 20 C.F.R. § 404.1527(d). While 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) provide that a treating source's opinion concerning the nature and severity of an individual's impairments will be given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record, "by negative implication, if a physician's opinion is not supported by clinical evidence or if they are inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Although treating sources have opined that the plaintiff is disabled, such opinions as to the ultimate conclusion of disability are never dispositive. *Morgan v. Barnhart*, 142 Fed. Appx. 716, 721-22 (4th Cir. 2005) (holding that a treating physician's opinion that a plaintiff was "disabled," "unable to work," could not work an eight hour job, could not do her previous work, etc., is not entitled to controlling weight). The decision as to disability is always reserved for the Commissioner. *Id. See* 20 C.F.R. § 404.1527(e)(1) and (e)(2). Generally, such opinions are to be given more weight the more the medical source presents relevant evidence to support the proffered opinion and the better the treating source explains the opinion. *See* 20 C.F.R. § 404.1527(d)(3). Likewise, the more consistent the opinion is with the record as a whole, the more weight it will be given. *See* 20 C.F.R. § 404.1527(d)(4).

18

In summary, substantial evidence supports the ALJ discount of the treating source opinions. His decision complies with the requirement that he "give specific, legitimate reasons for disregarding the treating physician[s'] opinion[s] that [the plaintiff] is disabled." *Goatcher v. United States Dep't. of Health & Human Servs.*, 52 F.3<sup>d</sup> 288, 290 (10th Cir. 1995). *Inter alia*, these reasons included indefinite and conclusory nature of Ds. Keim's and Simen's opinions, the absence of supportive clinical or other diagnostic techniques, and their inconsistency both with their own records and the medical record as a whole. Similarly, his discount of Dr. Gray's opinion was appropriately based on its inconsistency both with the doctor's own records and with the medical record as a whole.

Having given the required explanations, the ALJ did not err in discounting the treating source medical opinions, and the plaintiff's first assignment of error is without merit. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

**B.     Failure to Consider the Combined Effect
       of Plaintiff's Multiple Medical Conditions**

Contending that her condition is "analogous" to the condition found by the Eighth Circuit to be disabling in *Eback v. Chater*, 94 F.3<sup>d</sup> 410 (8th Cir. 1996), the plaintiff argues that combined effects of her medical conditions render her disabled. Her reliance on this case, however, is factually inapposite. Although the plaintiff herein and the plaintiff in *Eback* both documented asthmatic and sub-average intellectual conditions, the plaintiff in *Eback* also demonstrated multiple severe medical

19

conditions not present in the instant case, [24] including asthma of such severity that it required frequent hospitalizations, severe atrophic eczema, and chronic anxiety of such severity that the plaintiff had only a limited ability to undergo any type of stress. *See Eback v. Chater*, 94 f.3$^d$ at 412.

Without question, an ALJ is not permitted to fragmentize an individual's medical conditions and consider each isolation. The cumulative, or synergistic, effect of multiple impairments may be disabling when each individual impairment considered in isolation would not be. *Reichenbach v. Heckler*, 808 F.2$^d$ 309, 312 (4th Cir. 1985). Accordingly, an ALJ is obligated to consider the cumulative effect of an individual's medical conditions in evaluating a disability claim. 42 U.S.C. § 423 (d)(2)(B).

In the case now before the court, the record indicates the ALJ met this obligation and considered the cumulative effect of the plaintiff's impairments. For example, after setting out the factual assumptions regarding her impairments, the ALJ specifically asked the vocational witness to consider the plaintiff's combined exertional and nonexertional impairments. (R.435-440). In addition, the ALJ specifically noted his consideration of "the outline of [plaintiff's] medical issues prepared by her counsel" (R.33) and his consideration of "all symptoms, including pain," as part of the sequential evaluation process (R.31).

Read as a whole, therefore, it is clear that the ALJ adequately documented his sufficient consideration of the plaintiff's multiple conditions, as a whole, and how her impairments, in

---

[24] See e.g. footnotes 10 through 16 above.

combination, impacted her ability to engage in work activity. *See Smith v. Chater*, 959 F. Supp. 1142, 1147 (WDMo, 1997) (citing *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992)).

### C.     Summary

The court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. If he considered all of the relevant evidence and sufficiently explained his findings (including his rationale for crediting or discrediting evidence), the court must not re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).    The Commissioner is charged with evaluating the medical evidence, assessing symptoms, signs and findings, and, in the end, determining the functional capacity of a claimant. 20 C.F.R. §§404.1527-404.1545; *Hays v. Sullivan*, 907 F.2[d] 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2[d] 987 (4th Cir. 1984).

In making these determinations, the Commissioner by regulations is granted some latitude in resolving inconsistencies in evidence, and the court's review of the relevant factual determinations is one only for clear error.  20 C.F.R. §§ 404.1527 and 416.927.  *See also Estep v. Richardson,* 459 F.2[d] 1015, 1017 (4th Cir. 1972).

In the case now before the court, the Commissioner's final decision is supported by substantial evidence.  It provides both an adequate explanation and reference to relevant parts of the record to

support the determination to give only limited decisional weight to the treating source opinions. Likewise, sufficient consideration was given in the decision to the plaintiff's multiple conditions, as a whole and their impact, in combination, on her functional ability.

## V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The ALJ acted within his decisional authority to discount the treating physician opinions of Drs. Keim, Siman and Gray;

2. The ALJ properly considered the plaintiff's multiple medical conditions and associated functional limitations;

3. Substantial medical and activities evidence exists to support the ALJ's finding that plaintiff's evidence regarding the severity of her symptoms and functional limitations was not entirely credible;

4. The ALJ properly considered the plaintiff's subjective complaints;

5. The ALJ properly considered the plaintiff's exertional and nonexertional limitations;

6. Substantial evidence exists to support the ALJ's finding that plaintiff is not disabled within the meaning of the Act;

7. The plaintiff has not met her burden of proving disability;

8. Substantial evidence exists to support the ALJ's finding that plaintiff retains the residual function capacity top perform a limited range of work activity;

9. Substantial evidence exists to support the ALJ's finding that plaintiff is able to perform work of the type identified by the vocational expert and that such jobs are available in the national economy;

22

10. The final decision of the Commissioner is supported by substantial evidence; and

11. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order enter AFFIRMING the final decision fo the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States District Judge.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

23

The clerk is directed to transmit copy of this Report and Recommendation to all counsel of record.

DATED: 22nd day of March 2007.

_____s/ James G. Welsh_____
United States Magistrate Judge
